

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/14/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW COOPER,

               Plaintiff,

-against-

METROPOLITAN TRANSPORTATION
AUTHORITY, et al.

               Defendants.

No. 04 Civ. 525 (LTS)(AJP)

### MEMORANDUM OPINION AND ORDER

Plaintiff Matthew Cooper ("Plaintiff") commenced this action on January 15, 2004, against Defendant Metro-North, an agency of the Metropolitan Transportation Authority ("MTA"), and Defendants S.L. Harrington ("Harrington") and Andrew J. Paul ("Paul") (collectively "the Defendants") alleging, inter alia, unlawful retaliatory discharge from employment. The Court dismissed the original complaint as against Defendants Metro-North/MTA and Defendants Harrington and Paul in their official capacities (collectively the "Municipal Defendants") with leave to replead. The Court, however, denied Defendants' motion to dismiss Plaintiff's claims as against Harrington and Paul in their individual capacities. Plaintiff filed an Amended Complaint on July 5, 2005, alleging that several violations of his constitutional rights give rise to municipal liability and again asserting that the Municipal Defendants can be held liable for those violations under 42 U.S.C. Section 1983. Plaintiff also brings defamation and breach of employment contract causes of action under state law.

Defendants have moved to dismiss the Amended Complaint, asserting that (1)

COOPER MTD.WPD     VERSION 7/13/06     1

Faxed
Copies mailed to Plff's counsel, Def. counsel +
Chambers of Judge Swain mailed to M. J.
7/13/06

Plaintiff fails to state a claim for municipal liability against the Municipal Defendants, and (2) Defendants Harrington and Paul are public officials entitled to qualified immunity. For the reasons that follow, Defendants' motion to dismiss the Amended Complaint is denied as to Plaintiff's first, third, and fifth causes of action. Defendants' Rule 12(b)(6) motion is granted, however, as to Plaintiff's second and seventh causes of action. The Court has jurisdiction of this action pursuant to 28 U.S.C. Sections 1331, 1343 and 1367.

## BACKGROUND

The facts alleged in Plaintiff's Amended Complaint are taken as true for the purposes of this motion. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). Plaintiff joined Metro-North as a signal manager in 1991, and was promoted to Operations Manager in December 1999. (Am. Compl. ¶¶ 11, 13.) On August 15, 2003, Plaintiff and twelve others were injured in a train collision that also caused approximately $130,000 in property damage. (Id. ¶ 41.) At the time of the collision, Plaintiff was acting in his capacity as Operations Manager, and was attempting to rescue an electrical train that had become inoperative during the blackout occurring that day. (Id. ¶¶ 22, 29.) Plaintiff alleges that the August 15th collision was caused by inadequate training of the crew, an issue he had raised with superiors prior to the incident. (Id. ¶¶ 32, 44.) He also alleges that an order to push the inoperative train, which allegedly was a factor in causing the accident, was given in violation of safety regulations and good operating procedure. (Id. ¶¶ 31-40.) Plaintiff additionally alleges that Defendant Harrington, Metro-North's Deputy Chief of Operations Services, ordered him to take full responsibility for the collision, which Plaintiff

refused to do. (Id. ¶¶ 9, 43.) At the time of these events, Defendant Paul worked at Metro-North and held the position of Deputy Director of Labor Relations. (Id. ¶ 10.) On either September 2 or 3, 2003, Harrington, with the approval of Defendant Paul, terminated Plaintiff's employment for insubordination after Plaintiff twice failed to attend formal hearings held to determine the cause of the August 15th collision. (Id. ¶¶ 25, 26, 45.) Plaintiff contends that he was unable to attend the hearings because of physical disabilities resulting from the collision and that he provided a physician's note to Defendants explaining his inability to work or attend hearings. (Id. ¶ 19.) Plaintiff claims that Defendants used the insubordination charge as a pretext and that he was actually discharged in retaliation for his refusal to take responsibility for the August 15th collision and to prevent him from testifying at hearings concerning the incident. (Id. ¶¶ 47, 48, 61.)

Metro-North's "Termination of Employment" policy, which is attached to the Amended Complaint, provides that "[i]nvoluntary terminations of management employees should be reviewed by the Director, Human Resources with the Department Director before termination." (Id. ¶ 46, Ex. A.) Plaintiff claims that Defendants Harrington and Paul used this policy to discharge him, thus preventing him from testifying about the cause of the August 15th collision. (Id. ¶ 44.) Plaintiff also asserts in the Amended Complaint that Defendant Harrington was a policymaker empowered to make policy decisions for Metro-North/MTA, and that Defendant Paul was empowered to make policy decisions with regard to the Plaintiff on behalf of Metro-North/MTA. (Id. ¶¶ 9-10.)

The Amended Complaint also contains an attachment of Metro-North's "Sick and Disability Leave" policy and a letter written by Defendant Paul to the General Chairman of the

Association of Commuter Employees Union ("ACRE") concerning Plaintiff's alleged insubordination. (Id. Ex. A, B.) Plaintiff offers these materials in support of his claims that Defendants deprived him of his property and liberty interests.

## DISCUSSION

### Rule 12(b)(6) Standard

In considering a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court is obliged to accept as true the allegations in the complaint and draw all reasonable inferences in favor of the non-moving party. Blue Tree Hotels Inv., 369 F.3d at 217. Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). The Court's review is "limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Id. The Court may grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint. Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002). "[F]ederal courts are not permitted to apply a heightened pleading standard . . . in civil rights cases alleging municipal liability under § 1983." Leatherman, 507 U.S. at 168 (citation and internal quotation marks omitted).

Municipal Liability

To establish municipal liability, a plaintiff must identify a "government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that inflicts an injury under Section 1983. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). In Monell, the Court held that a municipality may not be held liable based on a theory of respondeat superior. Id. Thus, not every action taken by public officials subjects a municipality to Section 1983 liability; "municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 482 (1986) (plurality opinion) (emphasis added). "[T]he question of whether a given official is the municipality's final policymaker in a given area is a matter of law to be decided by the court." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000). The public official must have policymaking authority with respect to "the action alleged to have caused the particular constitutional or statutory violation." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). In a case involving retaliatory discharge, city officials not authorized to make employment policy lack final authority to provide a basis for municipal liability. City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988) (plurality opinion). Additionally, when an official's decisions are constrained by written municipal policies or subjected to review, that official lacks final policymaking authority. Id. at 127.

In the Amended Complaint, Plaintiff alleges that Defendants Harrington and Paul were empowered to make policy decisions on behalf of Metro-North and the MTA. Although the Second Circuit has held that complaints containing only conclusory, vague, or general allegations supporting claims of municipal liability should be dismissed for failure to state a claim, Dwares

v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993), Leatherman appears to have rejected this interpretation of the pleading standard applicable to municipal liability claims. See Leatherman, 507 U.S. at 165, 168; see also Simpkins v. Bellevue Hosp., 832 F. Supp. 69, 74 n.3 (S.D.N.Y. 1993) ("[T]he Leatherman opinion . . . appears to change the law in the Second Circuit which theretofore required dismissal of a complaint which merely asserted conclusorily the existence of a policy without allegations of fact beyond the single incident alleged in the complaint."). Several Second Circuit district courts have observed that Leatherman appears to adopt the Ninth Circuit rule that "a claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 624 (9th Cir. 1988); see, e.g., Hughes v. City of Hartford, 96 F. Supp. 2d 114, 116-17 (D. Conn. 2000); Lucas v. New York City, No. 95 CIV. 0854 (MBM), 1995 WL 675477, at *3 (S.D.N.Y. Nov. 14, 1995); Simpkins, 832 F. Supp. at 73-74. Under the Leatherman rule, therefore, Plaintiff's bare allegations that Harrington was a "policy maker" and that both Harrington and Paul were empowered to make policy decisions on behalf of Metro-North/MTA are sufficient, albeit minimally so, to withstand the instant Rule 12(b)(6) motion. See Leatherman, 507 U.S. at 165, 168.

  Defendants contend that Plaintiff has not sufficiently plead a basis for municipal liability, as the Amended Complaint does not allege that Harrington and Paul had final decisionmaking authority over Metro-North's employment policies. However, when read as a whole and in the light most favorable to the Plaintiff, the Amended Complaint is sufficient to support a reasonable inference that Harrington and Paul had final decisionmaking authority

regarding Metro-North's relevant employment policies.

Defendants additionally contend that the Amended Complaint must be dismissed because the "Termination of Employment' policy document annexed to the Complaint precludes the possibility of a finding that Harrington and Paul possessed final policymaking authority. The "Termination of Employment" policy provides that involuntary termination decisions "should be" reviewed by the Human Resources Director with relevant Department Directors. See Praprotnik, 485 U.S. at 127 (plurality opinion) (holding that government officials whose discretionary decisions are subject to review lack final policymaking authority). However, Metro-North's policy providing that the HR and Department directors "should" review involuntary discharge decisions is not necessarily inconsistent with the Plaintiff's allegations that Harrington and Paul possessed final policymaking authority. The language of the policy does not conclusively show that the directors actually review any firing decisions. See O'Connor v. Barnes, No. 97-CV-1489 (LEK/DNH), 1998 WL 1763959, at *4 (N.D.N.Y. Mar. 18, 1998) ("[A]n official with authority to make decisions in a particular area can be considered a policymaker where there is an absence of either substantive constraints on or meaningful review of the official's choices." (Emphasis added.)).

Accordingly, Defendants' motion to dismiss on grounds of failure to plead municipal liability is denied.

Qualified Immunity

Defendants also move to dismiss the action against Harrington and Paul on the basis that they are entitled to qualified immunity. The doctrine of qualified immunity "shields

governmental officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Poe v. Leonard, 282 F.3d 123, 131 (2d Cir. 2002) (quoting Harlow v. Fitgerald, 457 U.S. 800, 818 (1982)). When considering the issue of qualified immunity, the court must first answer the threshold question: "do the facts alleged, taken in the light most favorable to the plaintiff, show that the public official violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If a constitutional violation could be made out, a public official may be entitled qualified immunity if the claimed right was not clearly established or if it was "objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted). The Second Circuit has held that a right is "clearly established" if (1) "the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotation marks omitted). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon, 66 F.3d at 420-21.

Clearly Established Right

In the Amended Complaint, Plaintiff brings five causes of action (out of eight in total) relating to alleged violations of his constitutional speech and due process rights. Plaintiff first alleges that the Defendants violated his First Amendment rights by acting in retaliation for

Plaintiff's refusal to perjure himself and to prevent Plaintiff from testifying on a matter of public concern (such as the cause of the train collision). In the Second Circuit, public employees have a clearly established First Amendment right to testify on matters of public concern. Catletti ex rel. Catletti v. Rampe, 334 F.3d 225, 229-30 (2d Cir. 2003).

Plaintiff's third cause of action asserts that Defendants deprived him of a property interest in his sick and disability benefits as a result of the alleged unlawful discharge. Plaintiff alleges that he had rights, under Metro-North's policies, to continued short- and long-term, as well as medical, benefits not withstanding his termination and that Defendants deprived him of his protected interest in those benefits without due process of law. Metro-North's "Sick and Disability Leave" policy, which is attached to the Amended Complaint, provides for 100% of pay for up to 26 weeks of short-term sick leave and 60% of pay for long-term disability leave up to age 65 but is silent with respect to the effect of termination of employment. The "Termination of Employment" policy that is also attached to the Amended Complaint merely recites that "[t]erminating employees may be entitled certain compensable leave monies for . . . short-term sick leave as detailed in . . . [the] Sick and Disability Leave [policy]." At the time of his discharge, Plaintiff was allegedly recovering from the injuries he suffered during the August 15th collision. Plaintiff claims that Defendants refused to provide him with medical care, short-term leave or long-term disability leave benefits while he was ill and recuperating. The Second Circuit has held that placing an employee on unpaid sick leave is equivalent to suspending the employee without pay. O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005). Unpaid suspension without adequate due process may be analogous to unlawful termination where the loss of sick and disability benefits are concerned; in both cases, employers unconstitutionally

deprive former employees of benefits they should have otherwise received. Taking Plaintiff's allegations as true, it cannot be said that Plaintiff will not be able to demonstrate a clearly established protected property right based on a legitimate claim to sick and disability leave benefits.

Turning to the fifth cause of action, Plaintiff alleges that Defendants stigmatized him by terminating his employment, characterizing his conduct as an act of insubordination, publishing the insubordination charge in correspondence to ACRE, placing the information in his personnel file and making such allegations at a public hearing. Plaintiff alleges that these actions deprived him of a liberty interest in his reputation and negatively affected his prospects for future employment in the railroad industry and possibly other industries. These allegations sufficiently make out a "clearly established" protected liberty interest, commonly referred to as a "stigma plus" claim. "[I]njury to reputation by itself [is] not a liberty interest protected under the Fourteenth Amendment." Siegert v. Gilley, 500 U.S. 226, 228-29 (1991) (citing Paul v. Davis, 424 U.S. 693, 708-09 (1976)). However, a plaintiff may sufficiently make a Section 1983 liberty interest claim by alleging an "(1) utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false, and (2) some tangible and material state-imposed burden . . . in addition to the stigmatizing statement." Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (alteration in original) (citation and internal quotation marks omitted). The loss of employment exemplifies a tangible and material state-imposed burden. Paul, 424 U.S. at 701 ("[R]eputation alone, apart from some more tangible interests such as employment, is [not] . . . sufficient to invoke the procedural protection of the Due Process Clause."). The Second Circuit has noted that a typical "stigma plus" case involves a

stigmatizing statement by a state actor who also imposes the "plus," "such as when a government employer defames an employee in the course of terminating that employee." Id. at 88; see, e.g., Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir. 1996). Plaintiff sufficiently claims a clearly established liberty interest here, alleging that Defendants stigmatized him by falsely characterizing his conduct as an act of insubordination in the course of terminating his employment and that he was deprived of the protected interest without due process of law.

In his second and seventh causes of action, Plaintiff alleges that Defendants' unlawful discharge of Plaintiff deprived Plaintiff of a property interest in his management position without the due process of law guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution. Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972) (holding that a university professor terminated on the last day of his employment contract did not have a property interest in re-employment). The Supreme Court has held that plaintiffs who have a legitimate claim of entitlement to continued employment may assert a constitutionally-protected property interest. Perry v. Sindermann, 408 U.S. 593, 602-03 (1972). Under New York law, however, "an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Baron v. Port Auth. of New York & New Jersey, 271 F.3d 81, 85 (2d Cir. 2001) (quoting Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333 (1987)). Plaintiff may rebut the presumption of at-will employment "by establishing an express limitation in the individual contract of employment curtailing an employer's right to terminate at will." Id. (citation and

internal quotation marks omitted). In absence of such an employment contract, however, "an at-will . . . government employee generally has no claim based on the Constitution at all." Waters v. Churchill, 511 U.S. 661, 679 (1994); see also Recchia-Hansemann v. Boces, 901 F. Supp. 107, 110 ("[A] property interest in employment cannot arise for "at-will" employees.").

Plaintiff fails to sufficiently allege a violation of a clearly established right in his second and seventh causes of action. Plaintiff alleges it was Metro-North and the MTA's "custom and practice" to provide continued employment to management employees. Such a "custom or practice" is insufficient, however, to overcome the presumption of at-will employment. See Baron, 271 F.3d at 83, 89 (finding the employees' expectation of "job security" insufficient to create an implied employment contract that would support a constitutionally protected property interest); see also Majer v. Metro. Transp. Auth., No. 90 Civ. 4608 (LLS), 1990 WL 212928 at *4 (S.D.N.Y. Dec. 14, 1990). Plaintiff does not allege a contractual or statutory claim to continued employment that would constitute a protected property interest. See Capers v. Long Island R.R., 429 F. Supp. 1359, 1367-68 (S.D.N.Y. 1977). Nor does Plaintiff allege any "specific rule, regulation or policy of the MTA which would limit its right to terminate" at-will employees. Majer, 1990 WL 212928 at *4. At most, Plaintiff had a unilateral expectation of continued employment that fails to support a clearly established constitutional right. See Roth, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have . . . more than a unilateral expectation of it."); see, e.g., Capers 429 F. Supp. at 1368. Because Plaintiff does not show that he possessed a property interest in continued employment, he fails to assert a clearly established right necessary to overcome a qualified immunity defense for the second cause of action. Plaintiff is also not entitled to procedural

safeguards, as pleaded in the seventh cause of action, in absence of a constitutionally protected interest. See Majer, 1990 WL 212928 at *4 ("Plaintiff is only entitled to a hearing if he was deprived of an interest in property . . . As such, he had no entitlement to, or property interest in, continued employment with the MTA and no right to a hearing when his employment was terminated.").

Since Plaintiff fails to allege a clearly established right, Defendants' motion to dismiss is granted as to the second and seventh causes of action. Considering that Plaintiff fails the "clearly established" prong of a qualified immunity analysis, there is no need conduct an objective reasonableness inquiry for the second and seventh causes of action.

Objective Reasonableness

When considering the validity of a qualified immunity defense in circumstances that implicate "clearly established" rights, the Court must also inquire as to whether an objectively reasonable government actor would have thought the conduct at issue was lawful. Lennon, 66 F.3d at 420. Because the Court has found clearly established rights alleged in the first, third, and fifth causes of action, the Court must also conduct an inquiry on the objective reasonableness of the individual Defendants' actions for each of those claims.

In the first cause of action, Plaintiff alleges that Defendants deprived him of his First Amendment rights by asking Plaintiff to lie about the cause of the August 15th accident and, when he refused, by terminating his employment and preventing him from testifying at a public hearing. While viewing the Amended Complaint in the light most favorable to the Plaintiff, it cannot be said that an objectively reasonable public official would have thought it

legal to discharge Plaintiff in retaliation for his refusal to perjure himself and in order to prevent the Plaintiff from testifying on a matter of public concern. See Skehan v. Kelly, No. 03 Civ. 5977 (CLB), 03 Civ. 6824 (CLB), 04 Civ. 2968 (CLB), 2005 WL 1023206, at *9 (S.D.N.Y. April 15, 2005) ("[A] reasonable official would understand that an individual has a clearly established right to testify at a quasi-judicial disciplinary hearing without suffering retaliation."). Because Plaintiff alleges a clearly established First Amendment right and an objectively reasonable government official would not have thought it legal to discharge an employee in retaliation for exercising protected speech rights or to suppress such speech, dismissal of Plaintiff's first cause of action is improper at this stage. Accordingly, Defendants' motion to dismiss is denied as to Plaintiff's first cause of action.

Defendants' motion is also denied as to Plaintiff's third and fifth causes of action. Because Plaintiff alleges that his discharge was motivated by an unconstitutional reason, the Court cannot say as a matter of law that an objectively reasonable government actor would think it lawful to deprive Plaintiff of his clearly established property and liberty interests without due process of law. See, e.g., Verbeek v. Teller, 158 F. Supp. 2d 267, 283-84 (E.D.N.Y. 2001). Defendants' argument that a reasonable official would have thought it lawful to discharge the plaintiff for insubordination fails to credit as true, for purposes of the Rule 12(b)(6) analysis, the allegations of Plaintiff's complaint.

## CONCLUSION

The Court concludes that Plaintiff's Amended Complaint is sufficient to withstand Defendants' Rule 12(b)(6) motion as to the first, third, and fifth causes of action.

Accordingly, Defendants' motion to dismiss is denied on those claims. Defendants' motion is granted, however, as to Plaintiff's second and seventh causes of action on grounds of qualified immunity because the Amended Complaint fails to allege a violation of a clearly established right underlying those claims.

SO ORDERED.

Dated: New York, New York
July 13, 2006

LAURA TAYLOR SWAIN
United States District Judge